**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) JOHN DOE, a minor, by and through his parents and next friends, JAMES DOE and JANE DOE,<br><br>Plaintiff, | § | |
| v. | § | Case No. |
| (1) INDEPENDENT SCHOOL DISTRICT NO. 20 OF CADDO COUNTY, OKLAHOMA, a/k/a ANADARKO PUBLIC SCHOOLS a/k/a ANADARKO SCHOOL DISTRICT;<br><br>(2) JACQUELINE STONE; and<br><br>(3) FIRST BAPTIST CHURCH OF ANADARKO,<br><br>Defendants. | § | JURY TRIAL DEMANDED |

**PLAINTIFF'S COMPLAINT**

Plaintiff John Doe, a minor, by and through his parents and next friends, James Doe and Jane Doe, and his attorneys of record, and based on information and belief, alleges and states as follows:

## I. THE PARTIES

1. Plaintiff John Doe is a citizen of the State of Oklahoma and a resident of Caddo County, Oklahoma. At all material times, Plaintiff was a minor and attended Anadarko Public Schools, as required pursuant to Oklahoma law.

2. Defendant Independent School District No. 20 of Caddo County, Oklahoma, also known as Anadarko Public Schools and Anadarko School District ("School District"),

is a public educational institution located in Caddo County, Oklahoma, and is an Oklahoma school district organized and existing under the laws of the State of Oklahoma with its principal office in Caddo County, Oklahoma. Defendant School District receives county, state, and federal funding and is subject to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688, and 42 U.S.C. § 1983. Defendant School District may be served with process at its principal place of business: Attn: Jerry Marcum, Clerk, Anadarko Public Schools Board of Education, 1400 South Mission Avenue, Anadarko, OK 73005.

3. Defendant Jacqueline Stone was a math teacher at Anadarko Middle School and a volunteer youth worship leader at First Baptist Church of Anadarko during the times relevant to the allegations in this Complaint. Defendant Stone is a citizen of the State of Oklahoma. She is currently incarcerated at Mabel Bassett Correctional Facility in McLoud, Oklahoma.

4. Defendant First Baptist Church of Anadarko ("First Baptist Church") is a Christian organization located in Caddo County, Oklahoma, and affiliated with the Southern Baptist Convention. Defendant First Baptist Church is located at 700 West Petree Road, Anadarko, Oklahoma 73005.

## II. JURISDICTION & VENUE

5. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

6. This Court also has subject matter jurisdiction under 28 U.S.C. § 1343, which gives district courts original jurisdiction over any civil action authorized by law to be

brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

7. Pursuant to 28 U.S.C. § 1367, this Court also has subject matter jurisdiction over pendent state law claims regarding the violation of the Oklahoma Constitution, state statutes, and common law torts.

8. Venue is proper in this district, as the Defendants do business in this district, the events giving rise to the claims occurred (at least in part) in this district, and the Defendants reside and/or have their principal place of business in this district.

## III. FACTUAL BACKGROUND

9. From 2023 to 2025, Defendant Jacqueline Stone ("Jackie Stone" or "Stone") was a seventh grade math teacher at Anadarko Middle School and a sponsor for the youth group worship band at First Baptist Church of Anadarko.

10. Plaintiff was a student in Stone's math class during the 2023-2024 school year and a member of the youth group worship band.

11. In the spring of 2024, twenty-six-year-old Stone used these positions to begin grooming and sexually abusing thirteen-year-old Plaintiff, and the abuse continued until April 2025.

12. Both School District leadership and First Baptist Church leadership knew that Stone was sexually grooming Plaintiff but did nothing to stop it.

**A. Stone's Abuse of Plaintiff, Conviction, and Sentencing**

13. Between February 2024 and April 2025, when Plaintiff was thirteen and fourteen years old and Stone was twenty-six and twenty-seven years old, Stone sexually abused Plaintiff.

14. Over this period, Stone kissed Plaintiff, touched his genitals, and had him touch her genitals on numerous occasions.

15. For example, on December 22, 2024, Stone gave Plaintiff a ride home after lunch following a church service while Plaintiff's parents were in Norman to purchase a laptop. When Stone and Plaintiff arrived at Plaintiff's house, Stone asked if she could go in to use the restroom. Once inside, she asked Plaintiff to cuddle with her in bed, and Plaintiff complied. Stone and Plaintiff eventually took their clothes off and touched each other's genitals.

16. Stone and Plaintiff frequently communicated through text messages and handwritten and typed letters.

17. Stone often shared highly personal details with Plaintiff and manipulated him by offering advice and encouragement rooted in their shared Christianity.

18. In one early text message, Stone stated, "I just don't wanna be that one teacher that like goes to jail or something for texting her student."

19. Stone sent numerous pictures of herself to Plaintiff via text message, even sending him approximately thirty "selfies" on or around March 31, 2024.

20. Stone gave Plaintiff countless letters by leaving them in her desk at school for Plaintiff to find. Between classes, Plaintiff would go to Stone's classroom to pick up a binder he purposefully left in the classroom so that he could retrieve Stone's letters.

21. These letters discussed Stone's love for Plaintiff, including how she believed God destined the two of them to be together and how they would get married and have children—two boys and one girl—someday.

22. Stone frequently referred to Plaintiff using pet names such as "babe," "love," and "darling," and often signed letters with "your girl" or "your love."

23. Stone often told Plaintiff how handsome he was, gushed that he was all she could think about, and lamented the times they were unable to see each other, such as between certain classes at school.

24. Stone interfered with Plaintiff's social life at church and at school, instructing him not to spend time with girls his age so that he could focus his attention on her.

25. In February 2025, Stone gifted Plaintiff with a guitar pick that said "I pick you" to celebrate what she considered to be their one-year anniversary.

26. As the end of Plaintiff's eighth grade year approached, Stone began to pursue a job at Anadarko High School so that she could continue accessing Plaintiff at school during his ninth grade year.

27. On April 15, 2025, Plaintiff's mother found a book hidden behind a chair in her family's basement, which contained scriptures and love letters written by Stone to Plaintiff.

28. Plaintiff's mother then found the text messages Stone and Plaintiff had written to each other.

29. When Plaintiff's mother confronted Plaintiff, he became emotional and revealed the details of Stone's abuse. He then brought his parents a bag of letters written by Stone.

30. Plaintiff was so shaken up that he asked to sleep in his parents' room that night.

31. On April 16, 2025, Plaintiff's parents met with Superintendent of Anadarko Public Schools Jerry McCormick and Assistant Superintendent Danny Pittman and relayed to them what Plaintiff had revealed.

32. The Anadarko Police Department then commenced their investigation of Jackie Stone, interviewing Plaintiff, Plaintiff's parents, and witnesses from First Baptist Church of Anadarko and Anadarko Middle School.

33. Plaintiff was forensically interviewed at Mary Abbott Children's House, where he provided some of the details regarding the sexual abuse Stone had perpetrated against him.

34. After a thorough investigation, Stone was arrested on May 14, 2025. She was charged with seven felony counts of lewd or indecent acts to a child under 16 and two felony counts of lewd acts, in violation of 21 Okla. Stat. § 1123(A). *See State of Oklahoma v. Jacqueline Stone*, Case No. CF-2026-98 (Caddo County District Court).

35. On December 16, 2025, Stone entered a blind guilty plea to four counts of lewd or indecent acts to a child under 16 and one count of lewd acts. *See id.*

36. Stone was sentenced to twenty years on each count, with all but the first ten years suspended and with the sentences to run concurrently. *See id.*

**B. The School District's Notice of Stone's Abuse**

37. Defendant Anadarko Public Schools should have provided a safe learning environment for its students. It failed to do so.

38. In February 2024, Jane Roe, an Anadarko Middle School Teacher, first noticed an inappropriate interaction between Jackie Stone and Plaintiff. After school one day, four students were in Stone's classroom paying with a Hacky Sack. Stone fell to the ground while playing, and Plaintiff jumped on top of her, with their faces, chests, and stomachs touching. Stone did not push Plaintiff away or tell him to get off of her but played along.

39. Jane Roe immediately told Plaintiff to get off Stone. Jane Roe then privately spoke to Stone, admonishing her for not pushing Plaintiff off her and warning her that nothing like that incident should happen again.

40. Approximately two weeks later, Jane Roe witnessed Plaintiff stand over Stone and tickle her while Stone sat in her office chair. Plaintiff tickled Stone all over her body, including near her breasts, as Stone laughed and played along.

41. Jane Roe reported this incident to Principal LaVonda Bost. Bost stated she would speak to Stone but qualified that she understood Plaintiff and Stone had a unique relationship because they served on the youth group worship team together at First Baptist Church of Anadarko, where Principal Bost also attended church.

42. Jane Roe, wanting to ensure that Stone understood the seriousness of her actions, again spoke with Stone about her behavior with Plaintiff, and Stone stated that she struggled to set boundaries with students.

43. Approximately two more weeks later, in March 2024, Jane Roe witnessed Stone sitting in her office chair with Plaintiff standing over her very closely with his hands on the armrests of the chair.

44. Jane Roe sent Plaintiff away and spoke with Stone, asking her what she would have done if a principal or superintendent walked by. Stone stated she did not know.

45. Jane Roe told Principal Bost of the concerning behavior she witnessed and Principal Bost again stated that Stone and Plaintiff had a unique relationship because of their being on the youth worship team together.

46. At this point, other students at the middle school began to notice that Stone and Plaintiff had an unusually close relationship and speculate about its nature.

47. During the Spring 2024 semester, two students even approached Principal Bost with their concerns about Stone's inappropriate interactions with Plaintiff.

48. In April 2024, Jane Roe witnessed Stone sitting on Plaintiff's lap with her arms around him in Stone's office chair.

49. Jane Roe attempted to report this to Principal Bost, but she put her hand up to stop Jane Roe from speaking and said, "I don't want to hear it—just put it in writing."

50. Jane Roe wrote down what she witnessed and gave the report to Principal Bost.

51. Another middle school teacher, Samantha Parker, also witnessed Stone's inappropriate behavior toward Plaintiff and heard students discuss such behavior.

52. Ms. Parker's classroom was next door to Stone's, and she often saw Stone and Plaintiff alone in the classroom interacting in an inappropriate manner that made her uncomfortable.

53. For example, on one occasion she saw Plaintiff hugging Stone from behind with his head on her shoulder and Stone's head leaned back on Plaintiff's shoulder.

54. Ms. Parker reported this incident and at least one other inappropriate interaction between Stone and Plaintiff to Principal Bost.

55. During one of the discussions with Principal Bost about Stone's behavior toward Plaintiff, Ms. Parker filled out a written complaint.

56. Principal Bost called the Superintendent's office to discuss Stone's inappropriate behavior with Plaintiff and seek guidance on how to proceed.

57. Superintendent Jerry McCormick was a policymaker for the School District and typically addressed personnel matters brought to him by school principals.

58. When Superintendent McCormick was absent, he delegated this management of personnel issues to Assistant Superintendent Pittman.

59. Since Superintendent Jerry McCormick was out of office the day Principal Bost called, she spoke with Assistant Superintendent Danny Pittman about Stone's inappropriate behavior with Plaintiff, as reported by staff and students. Assistant Superintendent Pittman offered Principal Bost guidance on handling the situation.

60. On April 29, 2024, Principal Bost issued a written reprimand to Stone about her inappropriate behavior toward Plaintiff.

61. Assistant Superintendent Pittman informed Superintendent McCormick of his conversation with Principal Bost.

62. Despite the Assistant Superintendent, Superintendent, and Middle School Principal's awareness of Stone's inappropriate behavior toward Plaintiff, the School District did not investigate Stone or even speak to Plaintiff or his parents about Stone's behavior toward him.

63. Despite notice that Stone's inappropriate behavior toward Plaintiff frequently occurred when they were alone in her classroom, the School District implemented no supervision of Stone but allowed Plaintiff to continue spending time alone in her classroom.

64. The School District retained Stone as an employee in the 2024-2025 school year.

65. Stone continued seeing Plaintiff alone in her classroom and sexually grooming him during the 2024-2025 year, when Plaintiff was in eighth grade.

66. Despite multiple teachers, Principal Bost, Assistant Superintendent Pittman, and Superintendent McCormick knowing of Stone's inappropriate behavior with Plaintiff, no one reported her behavior to the Department of Human Services or the Anadarko Police Department.

67. Upon information and belief, prior to the 2025-2026 school year, the School District did not train teachers or school staff on recognizing, addressing, and reporting the sexual harassment or grooming of students.

68. On information and belief, such training for all staff, including teachers, was delivered by a law firm at the beginning of the 2025-2026 school year, after Stone's abuse of Plaintiff came to light.

69. Plaintiff has been physically, mentally, and emotionally injured by Stone's misconduct and Defendant School District's failure to adequately respond to Stone's behavior.

70. Since Stone's abuse of Plaintiff came to light, Plaintiff has received counseling in an attempt to deal with the trauma caused by Stone's abuse and the School District's failure to protect him.

**C. First Baptist Church of Anadarko's Notice of Stone's Abuse**

71. Stone's sexual grooming and abuse of Plaintiff did not just occur on school grounds, but her grooming and sexual abuse of Plaintiff also occurred on the grounds of First Baptist Church of Anadarko, a space where Plaintiff expected to be protected and nurtured.

72. First Baptist Church of Anadarko did not protect Plaintiff but gave a predator intimate access to him.

73. Before sexually grooming Plaintiff, Stone attempted to sexually groom a high school senior ("first intended victim") in the youth group band when she was a youth group band sponsor in 2023.

74. Like she did with Plaintiff, Stone attempted to gain the student's trust by sharing highly personal details with him and attempting to isolate him from age-appropriate love interests.

75. After Stone's first intended victim graduated, he and his girlfriend became youth group band sponsors.

76. When Stone realized her first intended victim was not interested in her, she turned her attention to Plaintiff.

77. Associate pastor and worship leader Blake Taylor gave Plaintiff Stone's phone number in or around February 2024.

78. Sometime in February or March 2024, when the youth group was playing hide and seek in the church, Stone got Plaintiff alone in a dark room and kissed him on the lips.

79. Another night, they were in a room by themselves at First Baptist Church's Student Center, which is a detached building dedicated to student ministry, and Stone sat on top of Plaintiff and began rubbing herself against him. They both touched each other's private parts under their underwear.

80. Stone continued abusing Plaintiff on church grounds by kissing him, touching his genitals, and having him touch her genitals on several other occasions over the remainder of 2024 and until her abuse was revealed in April 2025.

81. Stone often preyed on Plaintiff during youth group band rehearsal and during Saturday movie nights with the youth group band.

82. Various students and adults at First Baptist Church noticed Stone and Plaintiff behaving inappropriately and affectionately with each other in 2024 and 2025.

83. After a youth group trip to the Chickasha Festival of Light in the winter of 2024, several youth group members messaged one another about Stone and Plaintiff's inappropriate interactions.

84. At least one parent of a youth group member noticed Stone's inappropriate behavior toward Plaintiff and discussed it with Stone's first intended victim and his girlfriend.

85. Stone's first intended victim and his girlfriend had also noticed Stone behaving inappropriately toward Plaintiff and taking him to rooms without security cameras.

86. The couple eventually left the youth group worship band because it was too uncomfortable to be around Stone.

87. After they left, Stone was the only sponsor for the youth group band, so she was often the only adult in the room during the youth group band's weekly rehearsals.

88. Out of concern for Plaintiff, Stone's first intended victim and his girlfriend invited Plaintiff to dinner so that they could discuss the way Stone was treating him.

89. When Stone learned of this dinner, she interfered so that it never happened.

90. After this, in or around January 2025, Stone's first intended victim and his girlfriend approached associate pastor and worship leader Blake Taylor and expressed their concerns about Stone's inappropriate behavior toward Plaintiff.

91. Taylor then spoke with head pastor Lynn Bellamy and student ministry director Jason Brower about Stone's reported behavior.

92. Over the previous few months, Brower's wife and at least one other person had also told Brower that Stone behaved inappropriately toward Plaintiff.

93. Brower had one conversation with Stone in which he told her to put a Bible between herself and Plaintiff when they sat next to each other and to only side hug. Brower told Stone that she needed to make sure people did not get the wrong idea about her relationship with Plaintiff.

94. Brower also told Stone that if no one reported inappropriate behavior about Stone and Plaintiff for six months, he would consider the matter resolved.

95. Via letter, Stone informed Plaintiff of this conversation with Brower.

96. Despite three pastors knowing of Stone's behavior toward Plaintiff, they kept her on as a youth group band sponsor and allowed her to be the only adult in the room with the band.

97. No church staff approached Plaintiff or his parents about Stone's concerning behavior.

98. Unsurprisingly, Stone continued to abuse Plaintiff after January 2025.

99. On at least one occasion in spring 2025, Stone and Plaintiff rubbed each other's genitals on a ride home from church.

100. The week before Plaintiff reported Stone's abuse, she kissed him in the car on a ride home from church.

101. Though Brower stated youth group leaders were not allowed to give rides to members of the opposite sex, Stone often gave Plaintiff rides home from church alone.

102. Upon information and belief, youth group leaders were not provided training on identifying, addressing, and reporting sexual harassment and grooming until after Stone's abuse of Plaintiff came to light.

103. Upon information and belief, First Baptist Church of Anadarko did not adopt policies regarding sexual harassment or abuse until after Stone had already abused Plaintiff.

104. First Baptist Church's failure to adopt policies or provide training on identifying, investigating, and reporting sexual abuse is especially surprising considering a landmark 2022 report uncovering hundreds of cases of sexual misconduct and abuse in the Southern Baptist Convention from 2000-2020, as well as gross mishandling of sexual abuse allegations by convention leadership.

105. Plaintiff has been physically, mentally, and emotionally injured by Stone's misconduct and Defendant First Baptist Church's failure to adequately respond to Stone's behavior.

106. Since Stone's abuse of Plaintiff came to light, Plaintiff has received counseling in an attempt to deal with the trauma caused by Stone's abuse and First Baptist Church's failure to protect him.

## IV. CAUSES OF ACTION

### COUNT 1: VIOLATIONS OF 42 U.S.C. § 1983
### (Against Defendant School District)

107. Plaintiff re-alleges and incorporates by reference all the foregoing allegations

as if set forth fully herein.

108. Under the Fifth and Fourteenth Amendments to the United States Constitution, Plaintiff has the right to Due Process and Equal Protection of the law. These rights include the right to personal security and bodily integrity, as well as the right to be free from discrimination on the basis of sex.

109. At all times relevant hereto, Defendant School District was a state actor acting under color of state law.

110. Defendant School District deprived Plaintiff of his rights to Due Process and Equal Protection of the law by:

a) implementing and maintaining inadequate policies and procedures (including failing to enact policies and procedures) regarding reporting, investigating, and addressing alleged and/or suspected sexual harassment and abuse;

b) failing to adequately train staff members regarding reporting, investigating, and addressing alleged and/or suspected sexual harassment and abuse;

c) failing to adequately supervise teachers and staff members, including Stone, who was permitted to be alone with Plaintiff in her classroom even after the School District had notice of her inappropriate behavior toward Plaintiff; and

d) failing to investigate Stone after two students and two teachers reported her inappropriate behavior toward Plaintiff on multiple occasions and

after Stone continued to behave inappropriately toward Plaintiff in her classroom.

111. Anadarko Public Schools had an unconstitutional custom or policy of:

a) failing to properly investigate sexual abuse and harassment against students;

b) failing to report sexual abuse and harassment against students;

c) discounting the credibility of students' and teachers' allegations;

d) failing to adequately train and supervise employees with regard to the investigation and reporting of sexual abuse of students; and

e) failing to enact policies that require adherence to reporting requirements.

112. Anadarko Public Schools' custom or policy was demonstrated by the fact that Defendant received multiple allegations of misconduct regarding Stone, yet failed to investigate those allegations or report them to law enforcement and removed Stone only after a she was arrested.

113. Superintendent Jerry McCormick and Assistant Superintendent Danny Pittman possessed final policymaking authority over matters concerning student safety; reporting and investigation of misconduct, sexual harassment, and abuse; and staff training, supervision, and discipline.

114. McCormick and Pittman were aware of Anadarko Public Schools' custom or policy of disregarding allegations of sexual abuse and failing to investigate and report sexual abuse because Principal LaVonda Bost informed them of the repeated reports about Stone and noted such reports in the written reprimand of Stone.

115. Additionally, as policymakers, McCormick and Pittman made decisions and ratified decisions made by LaVonda Bost that caused the violation of Plaintiff's rights to Due Process and Equal Protection. McCormick and Pittman chose not to discipline Ms. Stone aside from one written reprimand, chose not to implement effective supervision of Ms. Stone, chose not to conduct an investigation of Ms. Stone, and chose to retain Ms. Stone despite her repeated improprieties.

116. The violation of Plaintiff's Due Process and Equal Protection rights was a highly predictable and plainly obvious consequence of deficient training practices regarding sexual harassment and abuse and of repeatedly failing to supervise, investigate, and discipline Stone.

117. The School District's deficient training, supervision, and investigation policies regarding allegations and evidence of sexual harassment and abuse directly caused Plaintiff to suffer physical, mental, and emotional abuse, depriving him of his rights under the Due Process and Equal Protection Clauses. School District employees—acting under that deficient training—failed to report open and obvious evidence of Stone's sexual harassment of Plaintiff to the Department of Human Services, Plaintiff's parents, or law enforcement, as required by law; failed to properly investigate when students reported suspicious behavior indicative of sexual abuse; downplayed and discounted the severity of such reports; and failed to take appropriate action to abate the harassment and abuse Plaintiff was suffering, including by failing to restrict Stone's virtually unfettered access to Plaintiff while on School grounds and eliminate her opportunity to place Plaintiff in vulnerable positions where she was free to abuse him. Each of these failures perpetuated

Plaintiff's abuse and the damages suffered as a result.

118. Defendant further affirmatively acted to create, or substantially increased, Plaintiff's exposure and vulnerability to the risk of sexual abuse by Defendant Stone.

119. Sexual harassment and abuse of students at school and during school hours—particularly by those in a position of trust like their teachers—is a known danger to students.

120. The School District created that danger and/or increased Plaintiff's vulnerability to that danger by ignoring repeated allegations and evidence of sexual harassment and abuse regarding Plaintiff; not immediately separating Stone from Plaintiff after credible reports of behavior indicative of sexual abuse; continuing to allow Stone unfettered access to Plaintiff in her classroom; and/or not immediately reporting the allegations and evidence of sexual harassment and abuse to authorities and/or Plaintiff's parents, as required by law.

121. The School District's actions and inactions also stripped necessary aid from Plaintiff and thereby created an opportunity for Stone to continue to abuse him. Proper reporting would have enabled law enforcement, regulatory bodies, or the Plaintiff's parents to shield Plaintiff from Stone's predatory conduct—whether by removing Stone from school premises, transferring Plaintiff to a safer educational environment, or otherwise limiting Stone's continued access to vulnerable students. Instead, the School District's failure to act allowed Stone's abuse to persist unabated, in direct violation of Plaintiff's constitutional right to bodily integrity and personal security.

122. The School District's conduct put Plaintiff and other minor male students

like him at substantial risk of serious, immediate, and proximate harm. That risk included the risk of being abused while at school and during school-sponsored activities. Indeed, Plaintiff *was* harmed *after* the School District had actual notice of serious grooming behaviors indicative of a sexually abusive and exploitative relationship between Plaintiff and his abuser Stone.

123. The risk of danger from sexual harassment and abuse was obvious and/or known to Anadarko Public Schools.

124. Anadarko Public Schools acted recklessly in conscious disregard of this risk, repeatedly allowing Stone unfettered access to Plaintiff at school despite reports of her inappropriate conduct towards him.

125. Anadarko Public Schools' conduct shocks the conscience.

126. Rather than fulfill their legal and moral obligations to protect minor students from foreseeable harm, School District administrators ignored clear red flags and, through their inaction, affirmatively enabled a known predator to continue abusing and traumatizing a male student under their supervision. This level of institutional disregard for student safety—and deliberate indifference to students' constitutional rights—is not only unconscionable, but constitutionally intolerable.

127. As a direct and proximate result of the School District's unconstitutional customs, policies, failures, and deliberate indifference, Plaintiff suffered severe emotional distress, psychological trauma, mental anguish, pain and suffering, and personal humiliation. These harms significantly impacted Plaintiff's ability to participate in and benefit from his education and have caused lasting damage to his mental and emotional

well-being.

**COUNT 2: NEGLIGENCE**
**(Against Defendant School District and Defendant First Baptist Church)**

128. Plaintiff re-alleges and incorporates the foregoing allegations as if set forth fully herein.

129. Defendant School District and Defendant First Baptist Church are each responsible for the acts and omissions of their respective employees done within the course and scope of their employment.

130. At all relevant times described in this Complaint, the School District's teachers, staff, and administrators described in the foregoing paragraphs were acting within the course and scope of their employment with the School District.

131. At all relevant times described in this Complaint, First Baptist Church's staff members were acting within the course and scope of their employment with the church.

132. Anadarko Public Schools and First Baptist Church are also responsible for their own acts and omissions with respect to hiring, supervising, and training of employees.

133. Anadarko Public Schools and its agents and employees owed a duty to Plaintiff and all other students under its protection to use reasonable care to protect students from sexual harassment and abuse.

134. First Baptist Church and its agents and employees owed a duty to Plaintiff and all other individuals on its grounds or taking part in church-related activities to use reasonable care to protect individuals, including minors, from sexual harassment and abuse.

135. The School District and First Baptist Church, on their own and through their employees, breached that duty of care by, among other things:

a. failing to properly investigate, report, and/or act upon allegations and evidence of sexual harassment and abuse of Plaintiff;

b. failing to take precautions to prevent Plaintiff from suffering further injury;

c. failing to adopt adequate policies and procedures to address allegations and evidence of sexual harassment and abuse;

d. failing to properly train and supervise its employees and volunteers regarding how to report, investigate, and address alleged and/or suspected sexual harassment and abuse; and

e. failing to properly supervise Stone, especially after receiving numerous reports regarding behavior indicative of sexual harassment and abuse.

136. As a direct and proximate cause of Defendant School District's and Defendant First Baptist Church's negligence, and the negligence of their employees, Plaintiff incurred significant damages, including severe emotional distress, psychological trauma, mental anguish, pain and suffering, and personal humiliation.

137. Defendants' conduct also involved a reckless or callous indifference to Plaintiff's rights in that Defendants acted in the face of and contrary to a perceived risk that their actions and the actions of their employees violated Plaintiff's rights, as set forth above. Defendants were aware, or simply did not care, that there was a substantial risk that the policies and customs they promulgated, the practices they condoned, and the negligence

and indifference of their agents and employees would cause serious harm to Plaintiff and others like him.

138. Anadarko Public Schools was properly served with Notice of Tort Claims, pursuant to the Oklahoma Governmental Tort Claims Act on December 19, 2025. Under the GTCA, the School District had 90 days thereafter (until March 19, 2026) to accept or reject Plaintiff's claim. The School District did not formally accept or reject Plaintiff's claim during that time. Plaintiff's claim has thus been deemed denied for purposes of the GTCA, and Plaintiff brings this claim within the allotted 180-day window from the date of such denial in which Plaintiff may bring his state-law claims against the School District.

**COUNT 3: GROSS NEGLIGENCE**
**(Against Defendant First Baptist Church)**

139. Plaintiff re-alleges and incorporates by reference all the foregoing allegations as if set forth fully herein.

140. Defendant First Baptist Church and its agents and employees owed a duty to Plaintiff and all other individuals on its grounds or taking part in church-related activities to use reasonable care to protect individuals, including minors, from sexual harassment and abuse.

141. Defendant First Baptist Church breached its duty to the Plaintiff because it failed to use reasonable care to protect Plaintiff from sexual harassment and abuse by an adult volunteer.

142. Defendant First Baptist Church breached its duty to Plaintiff because it permitted Stone to remain a youth group band sponsor and failed to supervise or discipline

her despite receiving multiple reports of her predatory behavior. It thereby subjected Plaintiff to lasting psychological trauma and emotional distress as a result of repeated horrific abuse at the hands of Stone, often on church grounds.

143. Defendant First Baptist Church's conduct involved reckless or callous indifference to Plaintiff's rights, in that Defendant acted in the face of and contrary to a perceived risk that its actions violated Plaintiff's rights. Defendant First Baptist Church was aware, or simply did not care, that there was a substantial risk that the policies and customs it promulgated, the actions it condoned, and the gross negligence and indifference that it displayed would cause and were causing serious harm to Plaintiff.

144. Defendant First Baptist Church's actions and the actions of its employees (for which Defendant First Baptist Church is vicariously liable) were taken with reckless disregard for Plaintiff's rights. As a result, Plaintiff is entitled to recover actual damages and, due to the egregious nature of Defendant First Baptist Church's conduct, punitive and exemplary damages to deter similar misconduct in the future.

**COUNT 4: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against Defendant First Baptist Church and Stone)**

145. Plaintiff re-alleges and incorporates by reference all the foregoing allegations as if set forth fully herein.

146. Defendant Stone's actions in her pursuit, grooming, and repeated sexual abuse of Plaintiff were so extreme and outrageous as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society. Indeed, her actions were criminal and such that she has been charged with multiple felonies

for what she did to Plaintiff.

147. Defendant First Baptist Church's actions and the actions of its agents and employees in downplaying and ignoring reports of Stone's inappropriate behavior with Plaintiff was so extreme and outrageous as to go beyond all possible bounds of decency and would be considered atrocious and utterly intolerable in a civilized society. Indeed, its actions in failing to investigate Stone's inappropriate behavior and failing to supervise or remove her upon receiving numerous complaints about her runs contrary to Oklahoma's laws requiring anyone who has reason to believe that a child under age 18 is a victim of abuse or neglect to report the matter promptly to the Department of Human Services.

148. Defendant Stone knew that her predatory actions were substantially certain to result in severe mental and emotional distress for Plaintiff or, at the very least, that there was a substantial probability that Plaintiff would experience such distress because of Stone's conduct.

149. Likewise, Defendant First Baptist Church knew that its failure to address such predatory behaviors was substantially certain to result in severe mental and emotional distress for Plaintiff or, at the very least, that there was a substantial probability that Plaintiff would experience such distress as a result. Indeed, Defendant First Baptist Church should be acutely aware of the impact of their failure to address signs of sexual abuse given the well documented history of sexual abuse that has occurred within the Southern Baptist Convention and the Southern Baptist Convention's frequent mishandling of such abuse.

150. Plaintiff did, in fact, suffer severe emotional distress, beyond that which a reasonable person could be expected to endure, because of Defendants' conduct.

151. Defendants' conduct was intentional and/or reckless, with disregard for the rights of others, including the rights of Plaintiff and, due to the egregious nature of Defendants' conduct, Plaintiff seeks punitive and exemplary damages to deter similar misconduct in the future.

**COUNT 5: ASSAULT/BATTERY**
**(Against Defendant Stone)**

152. Plaintiff re-alleges and incorporates by reference all the foregoing allegations as if set forth fully herein.

153. In her pursuit, grooming, and abuse of Plaintiff, Defendant Stone acted with the intent of making harmful and offensive contact with Plaintiff and with the intent of creating apprehension of an immediate harmful and offensive contact.

154. Defendant Stone's conduct in pursuing, grooming, and abusing Plaintiff did, in fact, place Plaintiff in apprehension of an immediate harmful and offensive contact.

155. In sexually abusing Plaintiff, Defendant Stone, without the consent of Plaintiff and with the intent of making harmful and offensive contact with Plaintiff, did make such harmful and offensive contact with Plaintiff.

156. Plaintiff suffered trauma, injuries, severe emotional distress, and damage as a direct and proximate result of Defendant Stone's conduct.

157. Defendant Stone's conduct was intentional, and, due to the egregious nature of Stone's conduct, Plaintiff seeks punitive and exemplary damages to deter similar misconduct in the future.

## V. JURY DEMAND

158. Plaintiff demands a trial by jury of all issues so triable.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants Anadarko Public Schools, First Baptist Church of Anadarko, and Jacqueline Stone, and award the following relief:

a. **Compensatory damages** for physical pain, psychological and emotional distress, trauma, mental anguish, humiliation, inconvenience, reputational injury, loss of dignity and bodily autonomy, loss of educational opportunities, interference with normal psychological and emotional development, damage to future relationships and trust in authority and loss of enjoyment of life, in an amount to be determined at trial;

b. **Special damages** for all future costs associated with therapy, counseling and psychological treatment;

c. **Punitive damages** against Stone and First Baptist Church to the extent permitted by law, for conduct that was intentional, malicious, reckless, and/or in conscious disregard of Plaintiff's rights;

d. **Declaratory judgment** that the School District's customs, policies, and practices as described herein violated Plaintiff's rights under the United States Constitution;

e. **Reasonable attorneys' fees and costs** pursuant to 42 U.S.C. § 1988 and any other applicable law;

f. **Pre- and post-judgment interest** as allowed by law;

g. Any such other and further relief as the Court deems just and proper under the circumstances.

Respectfully Submitted,


*/s/ Ross Leonoudakis*_________________
Bradley E. Beckworth, OBA No. 19982
Drew Pate, OBA No. 34600
Ross Leonoudakis, OBA No. 34570
Nathan B. Hall, OBA No. 32790
**NIX PATTERSON, LLP**
8701 Bee Cave Road
Building 1, Suite 500A
Austin, Texas 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335
*bbeckworth@nixlaw.com*
*dpate@nixlaw.com*
*rossl@nixlaw.com*
*nhall@nixlaw.com*

-and-

Cameron Spradling, OBA No. 8509
Katelyn Elrod, OBA No. 35596
**CAMERON SPRADLING, PLLC**
500 North Walker Avenue, Suite 100
Oklahoma City, Oklahoma 73102
Telephone: (405) 605-0610
Facsimile: (405) 605-0615
*cameron@cameronspradling.com*
*katelyn@cameronspradling.com*

***Attorneys for Plaintiff***


**JURY TRIAL DEMANDED**

**ATTORNEYS' LIEN CLAIMED**